Jose A. MONTOYA and wife Olivia Montoya, Appellants,

v.

NUECES VACUUM SERVICE, INC., et al., Appellees.

No. 585.

Court of Civil Appeals of Texas, Corpus Christi.

July 29, 1971.

Rehearing Denied Sept. 9, 1971.

Edwards & De Anda, William R. Edwards, David L. Perry, Corpus Christi, for appellants.

Dyer, Redford, Burnett, Wray, Woolsey & Dunham, S. Eldon Dyer, J. M. Burnett, Corpus Christi, House, Mercer, House & Brock, R. H. Mercer, San Antonio, for appellees.

## OPINION

SHARPE, Justice.

This appeal is from a judgment rendered after jury trial that appellants take nothing by their suit.

This suit was instituted by appellants Jose A. Montoya and wife Olivia Montoya, against Nueces Vacuum Service, Inc., and Jesse Lee Smith, defendants below and appellees here, seeking damages on account of the death of their son Steve Frank Montoya who was killed in an automobile accident occurring on October 14, 1966 in Nueces County, Texas. Steve Frank Montoya, usually referred to as "Frank" or "Frankie", was survived by his widow, Gloria Montoya, and a daughter, Stephanie, born after his death. The claims of the widow and minor daughter were settled prior to trial of the instant suit and are not involved herein.

In answer to two special issues inquiring as to the amount of compensation for the pecuniary damage sustained by each appellant as a result of the death of the son, Steve Frank Montoya, the jury found zero in each instance. A take-nothing judgment was rendered on the verdict.

Appellants assert 20 points of error. The first eleven points involve a basic contention that appellants are entitled to reversal and rendition of judgment in their favor for $50,000.00. Points 12 through 20 involve contentions which if sustained would result in reversal of the judgment and remand for new trial. Appellants' points 14 and 16 assert that the trial court erred in failing to grant a new trial because the jury answers to special issues 1 and 2 are each contrary to the overwhelming weight and preponderance of the evidence.

We have concluded that appellants' first eleven points should be overruled but that their points 14 and 16 should be sustained and that the judgment should be reversed and the cause remanded for a new trial.

We will first consider appellants' primary contention under their first eleven points—that they were and still are entitled to judgment as a matter of law that they recover damages in the amount of $50,-000.00 from appellees. This case was called for jury trial on October 7, 1969. At that time the trial pleadings consisted of appellants' original petition, filed on July 8, 1968, and defendants' first amended original answer, filed on February 6, 1969.

The record reflects that the first proceedings had on the morning of October 7, 1969, were as follows:

"MR. HOUSER: Now comes the Defendants herein, Nueces Vacuum Service and Jesse Lee Smith, and make this their Motion In Limine prior to the entry of the jury panel into the room and prior to the beginning of the trial of said case and having handed to the Court and to Counsel for the Plaintiffs Defendants' Admission In Order To Open And Close, and

Said Defendants' Admission In Order To Open And Close, an admission of liability having been filed, and moves the Court by the following Motion In Limine as follows:

Defendants in this case move the Court instruct Counsel for the Plaintiffs insofar as any opening remarks; insofar as any argument, explanation, questions or encounter, verbal or otherwise are concerned; limit himself to the strict and sole issue in this case in view of the admission of liability on behalf of Defendants to that one particular issue which will be litigated in kind and character, that being the damages occasioned to the Plaintiff as a result of the incident made the basis of this suit.

Defendants herein say and point out to the Court that it is undisputed in this case upon the documents on file and upon the pleadings of the Plaintiff on file that the deceased, who is made the basis of this suit, was an adult, twenty years old, married, emancipated and living away from home. It is also undisputed in this case that the deceased made the incident and basis of this suit was also working for—on a paid basis for his father in a family business and was being paid a salary on a per hourly basis. The sole issue to be litigated in this case is the amount of economic or monetary contribution which would have been made to the Plaintiff or Plaintiffs by the deceased during the period of his majority less any amounts of services or monetary gain which would have been contributed by the Plaintiffs to the deceased, and the Defendants herein move the Court to instruct Counsel accordingly to limit all issues, all questions and all performances before the jury by Counsel for the Plaintiff and by the Plaintiffs to those particular issues.

Wherefore, the Defendants move as pursuant to this motion that Counsel for the Plaintiff and the Plaintiffs be instructed accordingly and that the Court admonish all persons concerned with this case to limit his questions and encounters and endeavors to the particular issue at hand."

The instrument referred to by counsel for appellees in his foregoing motion in limine reads as follows:

"DEFENDANTS' ADMISSION IN ORDER TO OPEN AND CLOSE

TO THE SAID HONORABLE COURT:

NOW COMES THE DEFENDANT in the above entitled and numbered cause and admits that the Plaintiff is entitled to recover as set forth in his petition, except so far as it may be defeated in whole or in part by the allegations of the answer constituting a good defense, which may be established on the trial.

WHEREFORE, he prays that this admission be entered of record and that this defendant be allowed to open and close in adducing the evidence and in the argument of the cause."

Immediately following the statement of appellees' Motion in Limine, hereinabove set out, and the tender of appellees' above referred to "admission", there was considerable discussion, and apparent confusion, concerning the same, as is initially reflected in some 22 pages of the Statement of Facts.

Appellees, from the beginning of the proceedings on October 7, 1969, have contended that their admission related only to the issue of liability, leaving the issues of damages to be determined by the jury. Appellants' position concerning appellees' admission was not always the same and will be discussed further hereinafter.

Immediately after the statement by counsel for appellees of their Motion in Limine, as hereinbefore set out in full, the following proceedings took place.

"THE COURT: Reply? Have you all finished?

MR. EDWARDS: As I read the Defendants' Admission In Order To Open And Close, they have not admitted—well, let me back up. There has been raised by the defensive pleadings in this case contributory negligence, joint venture, sole cause, unavoidable accident. As I read this Defendants' Admission In Order To Open And Close, those things are not admitted. There is an 'Except for' in here, says 'except so far as it may be defeated in whole or in part by the allegations of the answer constituting a good defense, which may be established on the trial.' Now, as I read this, they have not admitted liability and unless and until they admit liability, I have a right to query the jury on all of the liability facts involved in this case.

THE COURT: Are you admitting liability?

MR. HOUSER: Yes, sir. This is, of course, is taken from—where you admit liability, which we have, that is, that they are entitled to recovery, that is, money damages in this case. That's what we are stipulating that they are entitled to recover. We are admitting liability but we are not admitting the amount that they are entitled to recover, which is the only thing we are quarreling with when we say 'which may be defeated in whole or in part by a good defense.' That defense may be that the damages are not what the Plaintiff alleges. Now, when we have admitted liability, we cannot raise the issue of contributory negligence. It would not be—would not be any evidence brought in by the Defendant; be no witnesses called by the Defendant. The only incident in this case is with regard to damages and that's the only issue to litigate.

MR. EDWARDS: Under those circumstances, I would like a docket entry that the issue of liability—the issues of liability are foreclosed in favor of the Plaintiff by the Admission of the Defendants.

THE COURT: All right, now, on—

MR. HOUSER: Your Honor, while you are making that docket entry, I would like it also entered that the Defendants' Admission In Order To Open And Close has been filed, which I understand under the law must be done.

MR. EDWARDS: Now, insofar as their right to open and close in this case, unless they are willing to admit that unless they prove to the contrary and assume the burden of proof of cutting down the $50,000 that we have alleged as damages in this case, then we have the burden not only of going forward, but have the burden of persuasion on the issue of damages and we still have the right to open and close."

The court then recessed for one hour and reconvened at 10:22 A.M. At that time the colloquy between the court and counsel continued, in part as follows:

"MR. EDWARDS: Judge, I would like —this is something that is completely a surprise to me, that they were going to admit liability. They have an allegation of defense on file that is as long as my arm with one after another of allegations of contributory negligence and other things, and if it—I would like sufficient time—probably going to take me about an hour to research the question of whether they have the right. I only want to try this lawsuit once, but I want my rights.

\*　　\*　　\*　　\*　　\*　　\*

THE COURT: Any other comments, gentlemen, before we rule here?

MR. HOUSER: No, sir.

MR. EDWARDS: We don't think they are entitled to open and close under the cases because we still have under any— any stretch of the admission here, we still have the burden of proving what our damages are. They are claiming that they have not admitted we were damaged $50,000. We therefore have the burden

of proof on each and every dollar of damages."

Counsel for appellants, among other things also made the following statements:

"Now, if we don't introduce any evidence, we don't get the $50,000 we asked for clearly. You might give us one dollar nominal damages under this admission but as to the other $49,999, we lose unless we put on evidence. We have the burden of going forward with the evidence as to those damages and we have the burden of persuasion as to those damages. They have made a partial admission, unless they are admitting that we suffered $50,000 damage and intend to bring on evidence like a confession and avoidance against that $50,000. Now they are telling me—I don't know what this means. As a matter of fact, if they take the position that this pleading gives them the right to open and close and will so state in the record, I believe that's what they are saying, that they admit enough to open and close, then I am going to move for a directed verdict on my pleadings."

Counsel for appellees then replied at length, stating among other things in substance that appellants' petition had prayed only for the full amount of their damages, to which appellees admitted appellants were entitled, but that the question remained as to the amount of such damages. Counsel for appellants then urged an oral motion for judgment in their favor in the amount of $50,000.00, contending primarily that no issue of fact remained to be tried by the jury. Immediately thereafter, the following proceedings were had:

"THE COURT: Gentlemen, I'm ready to rule unless you have any other matters. Insofar as this motion—how was it denominated?

MR. EDWARDS: Motion for Judgment.

THE COURT:—motion for judgment, that is denied to this extent, I am con-

struing this admission as a partial admission. Plaintiff will have the burden of opening and closing and the burden of proof on the evidence.

MR. EDWARDS: You say you are overruling the motion for judgment?

THE COURT: Yes, sir, and my ruling applies to that insofar as conditions—also on the matter of the admission and all other requests. Now, then, about the motion in limine.

MR. EDWARDS: Since they have admitted the liability fact, Judge, we don't intend to go into facts of—we intend to dwell purely on the damage issue in the case."

After discussion of other matters counsel for appellants and the court made the following additional statements:

"MR. EDWARDS: Judge, I wonder if I may make one phone call? It may be that I am going to take the first twelve jurors and rest or withdraw the—refuse to put on evidence and stand on my motion for judgment. I want to do some checking first.

THE COURT: All right."

The court then recessed for a short period of time and reconvened at 10:55 o'clock A.M. At that time appellants orally moved the court to allow them to withdraw their announcement of ready, in order that they might seek a writ of mandamus in an appropriate appellate court, which motion was also denied. The court then recessed until 1:55 o'clock P.M. We here set out in full all the proceedings had from that time until the beginning of the voir dire examination of the jury.

"THE COURT: All right. If you will, just restate for the record what you have—

MR. EDWARDS: All I want, Judge, is to clarify in the record their position. It's my understanding that the Defendants are standing on the Defendants' Ad-

mission In Order To Open And Close as to their position before the Court with regard to their request to open and close. Is that correct?

MR. HOUSER: (Nodding head affirmatively.)

MR. EDWARDS: You are nodding your head 'yes'? Just trying to clarify what the position is. Is that the position you are taking?

MR. HOUSER: I don't believe the attorneys for Defendants are under cross examination or in any effect called upon to give a clarification. We have had this before the Court. We have asserted we want to file it. We may not be entirely satisfied with it. I think it's inopportune at this time to say or ask to clarify what our position is. We have made a certain move here. Now, it's up to the Plaintiff to decide where and how he wants to proceed.

MR. EDWARDS: My understanding is that the Defendants' motion to be given the right to open and close is made on the basis of Defendants' Admission In Order And Close as filed?

THE COURT: That's my construction. There has been nothing else orally. That's the basis of all rulings heretofore in regard to this matter and any that are made hereafter.

MR. EDWARDS: Judge, in view of that, and in view of research that the Plaintiff has done, I believe that the Defendant is entitled to open and close and we withdraw our objection to the Defendants opening and closing this case.

THE COURT: Well, frankly, I think I'm right, but I will honor your objections and allow them to open and to close—the Defendant we are talking about.

MR. DYER: In view of his withdrawal of his objection?

THE COURT: Yes.

MR. EDWARDS: We would file a motion in limine then, Your Honor, It's—it merely precludes them from going into the element of damages before the jury. I think we have already—

THE COURT: We are overruling your motion. I believe evidence is necessary; therefore, we are overruling your motion."

The endorsement of the trial judge on appellees' admission reads as follows:

"10-7-69

Admission accepted but request to open and close by defendants denied."

The trial judge also made a docket entry as follows:

"10-7-69

Defendants admitted liability and filed instrument to that effect. Case came on for trial. Jury empanelled, selected and sworn."

The case then proceeded to trial with appellees opening and closing the evidence and the argument. Appellants were the only witnesses to testify before the jury. At various stages of the trial appellants re-asserted their position that they were entitled to judgment for $50,000.00 against appellees on the basis of an alleged judicial admission made by appellees under Rule 266, Texas Rules of Civil Procedure.

Rule 266, T.R.C.P., effective September 1, 1941, together with the Historical Note thereto, as the same appear in Vernon's Texas Rules Annotated, read as follows:

"Rule 266, Open and Close—Admission

Except as provided in Rule 269 the plaintiff shall have the right to open and conclude both in adducing his evidence and in the argument, unless the burden of proof on the whole case under the pleadings rests upon the defendant, or unless the defendant or all of the defendants, if there should be more than one, shall, after the issues of fact are

settled and before the trial commences, admit that the plaintiff is entitled to recover as set forth in the petition, except so far as he may be defeated, in whole or in part, by the allegations of the answer constituting a good defense, which may be established on the trial; which admission shall be entered of record, whereupon the defendant, or the defendants, if more than one, shall have the right to open and conclude in adducing the evidence and in the argument of the cause. The admission shall not serve to admit any allegation which is inconsistent with such defense, which defense shall be one that defendant has the burden of establishing, as for example, and without excluding other defenses: accord and satisfaction, adverse possession, arbitration and award, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, release, res judicata, statute of frauds, statute of limitations, waiver, and the like.

## HISTORICAL NOTE

Source

District and County Court Rule 31, modified by adding reference to Rule 269 and by substituting " 'is entitled to recover' for 'has a good cause of action,' and 'allegations' for 'facts.' The last sentence was added."

Appellants contend that an admission under Rule 266 admits every fact alleged in a plaintiff's petition, including the amount of damages, citing Smith v. Frost, 254 S.W. 926 (Tex.Com.App., 1923, Judgment adopted); Love v. McGee, 378 S.W.2d 96 (Tex. Civ.App., Texarkana 1964, wr. ref. n. r. e.); Trice v. Stamford Builders Supply, 248 S.W.2d 213 (Tex.Civ.App., Eastland 1952, n. w. h.); Phoenix Mut. Life Ins. Co. v. Bernfield, 101 S.W.2d 1025 (Tex.Civ.App., San Antonio, 1937, n. w. h.). The first and fourth of the above cited cases were decided under former Rule 31, and the second and third under Rule 266, effective September 1, 1941. None of the above-cited cases relied on by appellants involve a fact situation such as we have here.

In Smith v. Frost, 254 S.W. 926 (Tex. Com.App. 1923, Judgment approved), the plaintiffs below sued out writs of execution and attachment upon an automobile. The defendant Frost claimed that he owned the vehicle rather than the judgment debtor and made bond in the amount of $3,000, which was an amount double that fixed by the officer who levied the writs. The plaintiffs alleged the value of the vehicle to be $2,500.00. The primary issue in the case was as to the ownership of the automobile. Frost filed an admission under Rule 31 which was duly entered of record and was granted the right to open and conclude the evidence and the argument. The Trial Court ruled in effect that by such admission Frost had admitted that he was not the owner of the automobile, that Boggs Bros., the judgment debtors were the owners thereof, and for such reason there was no issue for the jury. Defendant's attorney was surprised at such ruling but made no effort to withdraw or qualify the admission until a Motion for New Trial was filed. The Court of Civil Appeals reversed. The Supreme Court reversed the judgment of the Court of Civil Appeals and affirmed that of the trial court. The commission of appeals held in part as follows:

"(2) The admission under this rule admits every fact alleged in the plaintiff's petition, the proof of which is necessary to their recovering in the first instance, and is an abandonment of all defensive matter set up in defendant's answer, except that in the nature of confession and avoidance. Smith v. Traders' Nat. Bank, 74 Tex. 541, 12 S.W. 221, and Dashiel v. Lott (Tex.Com.App.) 243 S.W. 1072. In this case the plaintiffs in error in their petitions alleged that at the time of the levy of the writs of execution and attachment, Boggs Bros., defendants in execution and attachment, were the owners of the automobile, and in possession thereof, and that defendant in error

Frost did not own and had no title to same, and that said car was of the value of $2,500. These facts were conclusively admitted by defendant in error; and the trial court, under the admission, could not do otherwise than instruct a verdict for plaintiffs in error.

(3) It is evident that, in making the admission, counsel did not intend to admit that defendant in error did not own the automobile, and that he was mistaken as to the effect of same. In his motion for new trial, claiming that from the record it is shown that he had a meritorious defense to the plaintiffs' cause of action, and was mistaken as to the effect of his admission, he asks that he be granted a new trial on the ground of surprise in the ruling of the court at the close of the evidence, and here assigns error on the action of the court in overruling his motion. We are of opinion that the district court did not abuse its discretion in overruling the motion for new trial. At the close of the evidence the court heard the motions of both plaintiffs in error and defendant in error asking for an instructed verdict, and presented his charge to counsel for defendant in error, who filed written objections thereto. No request was made to either withdraw the admission or his announcement of ready for trial by reason of such surprise at the action of the court, and this assignment is set up for the first time in his motion for new trial. Kilgore v. Jordan, 17 Tex. [341] 346; Ables v. Donley, 8 Tex. 331, 337.

We recommend that the judgment of the Court of Civil Appeals be reversed, and that of the district court affirmed."

The instant case is not like Smith v. Frost, supra, where an unqualified admission was made under former Rule 31 and entered of record as tendered by the defendant who was then given the right to open and close the evidence and argument, and when the trial court ruled against him did not timely take any steps to withdraw or

qualify his admission or his announcement of ready for trial because of surprise at the ruling of the Court concerning the admission filed by him, but waited until his motion for new trial to raise the question; and wherein the commission of appeals held that there was no abuse of discretion in overruling that motion.

In Love v. McGee, supra, a trespass to try title case, the court held in part as follows:

"(1) When the Rule 266 motion was allowed, defendant Love admitted the plaintiffs and appellees here, Gertrude A. McGee, her son Carl N. McGee, Jr., and daughter, Peggy Joyce Maness, had a prima facie case and were entitled to judgment for title and possession of the land described in their petition unless he, defendant Love, disproved their title by establishing the allegations of his answer constituting good defenses. Smith v. Traders' Nat. Bank, 74 Tex. 541, 12 S.W. 221; Hancock v. Frost Lumber Industries, Inc., of Texas, Tex.Civ.App., 182 S.W.2d 747; 23 Tex.Law Review 293; Trice et ux. v. Stamford Builders Supply, Tex.Civ.App., 248 S.W.2d 213; 41 Tex.Juris. 755. However, the issues joined by the pleadings, more specifically the 'good defenses' set out in his answer that defendant Love undertook the burden of proving, are in dispute and the disagreement must be resolved. * * *"

The present case is also not like Love v. McGee, supra, where the defendant's admission under Rule 266 was accepted by the court (apparently in a non-jury trial) and the defendant allowed to open and close the case as a plaintiff, but failed to make out his defenses, although the Court of Civil Appeals granted a judgment for defendant over against certain parties on the basis of breach of warranty of title.

In Trice v. Stamford Builders Supply, supra, another trespass to try title case, the court held that the trial court erred in refusing the appellants (defendants) the right to open and close the jury argument

in view of an agreement made by the parties and the burden of proof on the issue submitted to the jury. The court held in part as follows:

"We are of the opinion that the agreement entered into between the parties met the requirements of the rule. Appellants agreed therein that appellee had the record title to the land and is entitled to recover title and possession unless appellants can recover title and possession under their plea of limitation. The admission contemplated by the rule must be such as to relieve the plaintiff from the necessity of offering any evidence in support of his case. It must be such an agreement as will entitle the plaintiff to judgment if no evidence is introduced by either party. 41 Tex.Jur., page 755. The agreement in this case relieved appellee of the necessity of offering evidence. Appellee introduced the agreement and rested its case. If appellants had introduced no evidence, appellee would have been entitled to a judgment. Furthermore, the burden was upon appellant on the issue submitted to the jury.

'The party having the burden of proof on the whole case, or on all matters which are submitted by the charge, whether upon special issues or otherwise, shall be entitled to open and conclude the argument; * * *'

It is our opinion that appellants should have been allowed to open and close the argument. The refusal of the court to allow appellants this privilege constitutes reversible error. R.C.P. 266, 269; Stone v. Morrison & Powers, Tex.Com.App., 298 S.W. 538; Stolpher v. Bowen Motor Coaches, Inc., Tex.Civ.App., 190 S.W.2d 376; Meade v. Logan, Tex.Civ.App., 110 S.W. 188; Kennedy v. McCauley, Tex. Civ.App., 236 S.W. 752; National Aid Life Ass'n. v. Alexander, Tex.Civ.App., 113 S.W.2d 272; Phoenix Mut. Life Ins. Co. v. Bernfield, Tex.Civ.App., 101 S.W. 2d 1025; Nass v. Nass, Tex.Civ.App., 224 S.W.2d 280; Id., [149] Tex. [41], 228 S.W.2d 130."

This case is also not like Trice v. Stamford Builders Supply, supra, wherein the defendants were improperly refused the right to open and close the argument to the jury.

In Phoenix Mut. Life Ins. Co. v. Bernfield, supra, the court held in part as follows:

"Furthermore, when Bernfield filed his admission under rule 31, for county and district courts, and thereby obtained for himself the right to open and close the argument, he admitted appellant's cause of action and right to recover, except as it might be defeated by defensive pleas in the nature of confession and avoidance. A plea of want of consideration is not a plea in the nature of a confession and avoidance. National Bank of Commerce v. Williams, 125 Tex. 619, 84 S.W.2d 691; Ferguson v. American Bank & Trust Co. (Tex.Civ.App.) 13 S.W.2d 459; Smith v. Traders' National Bank, 74 Tex. 541, 12 S.W. 221.

Appellees contend that district and county court rule 31 requires that the admission must be made in writing and must be made before the introduction of evidence is begun and must also be made by all the defendants. We are of the opinion that the admission being written in shorthand by the court reporter fulfills the requirements that the admission must be in writing. The admission having been made before the arguments began and appellee having thereby obtained the right to open and close, the admission was made in sufficient time and appellee is in no position to complain that the admission was not sooner made."

The present case is also not like Phoenix Mutual Life Ins. Co. v. Bernfield, supra, where the trial court held that the defendant was entitled to open and close the jury argument and secured a favorable finding upon which personal recovery was denied against him, and the Court of Civil Appeals reversed, holding that plaintiff was entitled to an instructed verdict and judgment for

such personal recovery against the defendant.

In the case of National Bank of Commerce v. Williams, 125 Tex. 619, 84 S.W.2d 691 (1935) the court held in part as follows:

"An *admission by defendant filed* under district and county court rule No. 31, to the effect that the plaintiff has a good cause of action as set forth in his petition, except so far as it might be defeated in whole or in part by facts of the answer, and that such admission is made by defendant in order to obtain the right to open and close in the introduction of testimony and in the argument, admits every fact alleged in the petition which is necessary to the plaintiff's recovery in the first instance, and constitutes an abandonment of all defensive matter, except that in the nature of confession and avoidance. Rector v. Evans (Tex.Com. App. Opinion Approved) 6 S.W.2d 105; Smith v. Traders' National Bank, 74 Tex. 541, 545, 12 S.W. 221; Smith v. Frost (Tex.Com.App.) 254 S.W. 926; Ferguson v. American Bank & Trust Co. (Tex.Civ.App. writ ref.) 13 S.W.2d 459."

In 23 Tex.L.Rev. 293, 294 (1944) the case of Hancock v. Frost Lumber Industries, Inc., of Texas, 182 S.W.2d 747 (Tex.Civ. App., Beaumont, 1944, n. w. h.) is discussed. In particular, the effect of the last sentence of Rule 266 (which was added to old Rule 31) is noted. After mention of several decisions under the old Rule, including National Bank of Commerce v. Williams, supra, the following comment is made:

"These decisions would seem to be overruled by the last sentence of new Rule 266: 'The admission shall not serve to admit any allegation which is inconsistent with such defense, which defense shall be one that defendant has the burden of establishing, as for example, and without excluding other defenses: accord and satisfaction, adverse possession, arbitration and award, contributory neg-ligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, release, res judicata, statute of frauds, statute of limitations, and the like.' By listing defenses not in confession and avoidance, and not arising after the cause of action, such as fraud, adverse possession, and contributory negligence, among those available after the admission, the new rule renders obsolete such decisions as Meade v. Logan, supra, and National Bank of Commerce v. Williams, supra. The formula set forth in Smith v. Trader's National Bank, supra, is reinstated: Any defense that the defendant has the burden of establishing is available after the admission, and averments by the plaintiff incompatible with such a defense are not admitted. The principal case, while not passing on the scope of the admission, illustrates the operation of the reformed practice in actions of trespass to try title where the defense is adverse possession."

■ It thus appears that under Rule 266, and particularly because of the last sentence thereof, even after a proper admission is made, the defendant is no longer limited to defenses in confession and avoidance (as the cases held under former Rule 31) but may rely upon any defense which the defendant has the burden of establishing, and averments by the plaintiff incompatible with such a defense are not admitted.

None of the cases above discussed nor any others that have been cited to us involve a fact situation where a defendant's admission was tendered as a partial one was held by the trial court to be partial only, and defendant's request to open and close the evidence and argument was denied.

In the present case the initial question which the trial court was called upon to decide was whether the admission tendered by appellees was a partial one (relating to liability only) or a complete one (relating both to liability and to damages). After

extended discussion the trial court ruled that appellees had made only a partial admission. The court then denied appellees' request to open and close. The court also overruled appellants' motion for judgment (being the first one of that nature made by appellants). At that time the posture of the case was that appellees had admitted liability and appellants were entitled to proceed to trial on the issue of damages with the right to open and close the evidence and argument concerning same. At a later time, after two recesses of court, counsel for appellants stated in substance that he believed that appellees had the right to open and close and that appellants withdrew their objections to appellees opening and closing. At that time the judge made it clear that his prior rulings were thought to be correct but that appellees would be allowed to open and close because appellants had withdrawn their objections to such action. The trial proceeded on that basis.

■ Appellees' tendered written admission was not offered by them as a complete admission applicable to damages as well as liability; nor was it accepted and entered of record by the court as a complete admission. The admission made by appellees, in view of their motion in limine and statements made in open court by counsel for appellees concerning that motion and appellees' admission, was not the kind of admission contemplated by Rule 266. The trial court was not required to accept appellee's tendered admission as a complete one under Rule 266, T.R.C.P., and properly qualified it by endorsing it and making a docket entry to reflect that the admission was partial only. The record, therefore, establishes that the appellees' tendered admission was never accepted by the trial court as a complete admission under Rule 266, T.R.C.P., and was never "entered of record" as such as provided by that Rule. In that situation appellees were not entitled to open and close the evidence and argument. The trial court ruled correctly in so holding. The ruling in such respect was

never changed. Appellees were permitted to open and close only after counsel for appellants had affirmatively stated that he believed appellees were entitled to do so and withdrew appellants' objections to such procedure; and appellants do not now assert reversible error because of such procedure, which, in any event, was invited by them.

■ Even if we should agree that the trial court erred in holding that only a partial admission (that of liability) was made by appellees, it does not necessarily follow that the trial court should have granted appellants' motion (or motions) for recovery of $50,000.00, nor that this court should reverse for such reason and here render judgment in that amount for appellants. If the trial court had initially ruled that appellees' admission was not a partial one, but instead was a complete one, it is apparent from the state of the record then presented that there was no issue left to be tried, assuming (without deciding) that appellants' damages were alleged in a definite amount in their petition. In such assumed event, appellees would undoubtedly have had the right to withdraw the admission as so construed or to amend it in such manner as to admit liability only and to leave for trial the issue of appellants' damages. See Smith v. Frost, supra; Federal Life Ins. Co. v. Wilkes, 218 S.W. 591 (Tex. Civ.App., Amarillo, 1919, n. w. h.). As a practical matter that result was accomplished by the rulings of the trial court.

■ Even if reversible error is presented by the trial court ruling that appellees' admission was partial and not complete, this court would be authorized to remand the cause for new trial rather than render judgment for appellants in the amount of $50,000.00, and in such event we would hold that the justice of the case would require a remand. Rule 434, T.R. C.P.; Fay v. Fay, 151 S.W.2d 607 (Tex. Civ.App., Waco, 1941, wr. dism. J. corr.); Meade v. Logan, 110 S.W. 188 (Tex.Civ. App., Texarkana, 1908, wr. dism.).

Appellants' points 1–11 are overruled.

We now pass to a discussion of appellants' points 14 and 16 which assert in substance that they are entitled to a new trial because the jury answers to special issues 1 and 2 (zero damages for appellants) are each contrary to the overwhelming weight and preponderance of the evidence. Appellants were the only two witnesses on the trial of the case. Mr. Jose A. Montoya testified in substance as follows: Frank Montoya, the son was twenty years of age at the time of his death. He was the second of six children born to Jose and Olivia Montoya. He died as a result of the accident on October 14, 1966, approximately two months after his marriage. Mr. Montoya owns Nueces Auto Parts, a business in Corpus Christi, Texas, which he had operated for several years. He is in failing health, having suffered a heart attack in January 1965 and another in 1968. Mrs. Montoya has no business experience or other ability to run the business if something should happen to Mr. Montoya. Frank's older brother, Joe A. Montoya, Jr., is an engineer living in San Antonio. Although both he and Frank worked in the business when they were young, Joe left the store about 1965. There are no plans for Joe to return to the family business. Frank's younger brother, Bobby, has worked in the store, but not as much as Frank, being more interested in other activities. He helps now in the store, but requires more supervision than did Frank and is not as quick to learn. Mr. Montoya hopes he will stay in the business. Frank Montoya began working in the store at about age 11. The summer before his death, Frank worked for his father 8 hours per day, 7 days per week. After his marriage, he rented a house from his parents and commuted to classes at Texas A & I, Kingsville, Texas, working after school in the store. His studies were directed toward remaining in the family business. Frank graduated from high school in about 1963, and attended Del Mar College in Corpus Christi and St. Mary's University in San Antonio. After

his marriage, he transferred to Texas A & I at Kingsville, Texas, and would have graduated in one more year (1967) had he not been killed. He majored in business administration. Frank worked in his father's store while in college. When he was at St. Mary's he came home on weekends and in the summer to help in the store. While commuting to Texas A & I he worked in the store after school and on weekends. After Mr. Montoya's first heart attack, Frank came home from school for several weeks to help run the store, and to assist the family by giving advice and taking care of necessary papers. He was willing to take care of the business during his father's illness, and told his parents not to worry, that he would take care of such things. When his mother worried about having to go to work and leave the younger children, Frank told her not to worry, that he would work and she could stay home and raise the younger children as she had him. Frank was planning to join his father in the family business when he finished school. His business administration studies were undertaken toward that end. The store is open from 7:00 A.M. until 11:00 P.M. and will continue in that fashion if Mr. Montoya can keep it up. Before his first heart attack, Mr. Montoya ordinarily worked 15 to 16 hours per day. His first illness incapacitated him about nine weeks. He was expecting Frank to relieve some of the load. Earnings from the business were approximately $40,000.00 in 1966, $50,000.00 in 1967, and $44,000.00 in 1968. After Frank's death, Mr. Montoya began working more than usual while trying to get somebody to help him take care of the business. About Easter of 1968, Mr. Montoya suffered his second heart attack, and was forced to leave work for five or six weeks. Since that time, Mr. Montoya has not been able to properly take care of the business. His gross sales rose from $184,-429.00 in 1966 to $249,190.00 in 1968 (the last full year prior to trial), but his net profit dropped slightly more than $300.00. Although other factors were involved, Mr. Montoya explained that the trouble was

due to his inability to properly manage the business without Frank. Since Frank's death, Mr. Montoya has been unable to find anyone to take his place in the business. Frank's position in the business was very much a family, father-son relationship. Mr. Montoya has been unable to find someone with like responsibility, ability and experience, with the same interest in the business, someone in whom he can place the trust and confidence that he had in his son.

Mrs. Montoya testified that she valued especially the services and personal assistance she and her husband received from Frankie, including relieving her husband of the pressures of his business. Nevertheless, she did not doubt that if she ever needed monetary assistance, it would be forthcoming. Mrs. Montoya has no business experience. Frank had always been willing to help when needed, and when Mr. Montoya became ill, he assured her that he would go to work and help her support three younger children, if necessary.

The evidence shows that Mr. and Mrs. Montoya each was 51 years of age and had been married to each other since 1943. The parties stipulated that for the purposes of this suit it could be assumed that in reasonable probability Mr. Montoya had a life expectancy of 15 years and Mrs. Montoya of 27.7 years.

■ The testimony in this case reflects that Mr. Montoya had built a successful business but was in ill health and could not properly manage his enterprise as before. Frank Montoya since childhood had assisted his father in the business and was about to complete his formal education and assume more of the load of management which his father could no longer bear. The ability and willingness of the son to assist his parents and their need for such assistance was overwhelmingly shown and not controverted by any evidence. Appellees' argument in connection with the jury findings on the damage issues is largely based upon some of the answers given by Mr. and Mrs. Montoya (mostly in response to questions by counsel for appellees) to the effect that Frank and the other boys had not contributed monetarily to the parents and that during the life times of the parents they would continue to control the business and would probably earn and accumulate more than their children. While these factors may be considered in connection with determination of the damage issues, they do not prevent recovery by the parents upon a proper showing for loss of pecuniary benefits on account of their son's labor and his service and attention in ministering to the wants and necessities of the parents.

■ The value in dollars and cents of pecuniary benefits in money, property or services which appellants would have received from their son during his lifetime, had he not been killed in the accident in question, is within the particular province of the jury. However, in this case the evidence unquestionably justified a finding for some amount in favor of the parents. After considering all the evidence herein we have concluded that the jury answers of zero to special issues 1 and 2 are so against the overwhelming weight and preponderance of the evidence as to be manifestly wrong and unjust. We are unable to find any reasonable basis in the evidence upon which we can sustain the jury's answers to the damage issues when they are considered in the light of appellants' contentions of factual insufficiency. Most of the Texas decisions concerning recovery of damages by parents for the death of an adult child involve the question of excessiveness of the award rather than its inadequacy. In connection with the subject generally, see Anderson v. Broome, 233 S. W.2d 901 (Tex.Civ.App., El Paso, 1950, n. w. h.), upholding award for $5000.00 in favor of parents for death of 19 year old son; Marcus v. Huguley, 37 S.W.2d 1100 (Tex.Civ.App., Dallas, 1931, wr. dism.) upholding award for $2500.00 in favor of parents for death of 27 year old daughter;

Galveston, H. & S. A. Ry. Co. v. Leifeste, 8 S.W.2d 764 (Tex.Civ.App., San Antonio, 1928, affirmed 22 S.W.2d 1061, Tex.Com. App., 1930, judgment approved) upholding award for $7500.00 in favor of parents for death of 25 year old son. See also Kansas City Southern Railway Company v. Caruso, et al. (5 C.A., 1968), 387 F.2d 602, involving an appeal from the U. S. District Court for the Eastern District of Texas. In the last-cited case the court sustained an award for $5000.00 in favor of the parents of a married son (in addition to an amount of $5,114.38 for medical, hospital and funeral bills) and in part held as follows:

"This was a damage suit brought by the widow and parents of Sam Caruso, Jr., for damages they respectively sustained as a result of his death caused by a car-train collision on August 28, 1965. The jury made a verdict in favor of the widow for $30,000.00 and a verdict in favor of the parents of $5,000.00. The court made an additional award of $5,114.38, to the parents for medical, hospital and funeral bills. The appeal attacks only the awards to the parents.

The evidence is clear that, after his marriage, Sam Caruso, Jr., had not made any financial contribution to his parents. On the other hand, there was ample evidence to support the jury's finding that in all reason the parents could expect financial benefits from the continuing in life of their son, especially in light of the testimony that plans had been at least tentatively made for the father and son entering into business together. This satisfies the Texas decisions entitling the parents to a recovery even after the son is an adult and is married. With respect to the judgment for out of pocket expenses, the amount of these was stipulated and in light of the stipulation and in light of the liberal rules of federal pleading, we find no error in the entry of judgment for this amount in favor of the appellees."

Appellant's points 14 and 16, which assert that the jury answers to the damage issues are against the overwhelming weight and preponderance of the evidence and that they are entitled to a new trial, are sustained. In view of this holding, appellants' remaining points need not be discussed.

The judgment of the trial court will be reversed and the cause remanded for new trial.